# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MASTER DOCKET 18-MD-2865(LAK)
CASE NO. 18-CV-09797

IN RE:

CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION

C O N F I D E N T I A L

REMOTE VTC VIDEOTAPED DEPOSITION UNDER ORAL EXAMINATION OF
MICHAEL BEN-JACOB
VOLUME II
DATE: October 12, 2021

REPORTED BY: MICHAEL FRIEDMAN, CCR

pension fund within the meaning of Article 4, Article 10 and Article 22 of the Double Taxation Convention between Denmark and the United States of America, and request Acupay System, LLC to apply for a full refund of excess withholding tax."

Do you see that?

A I do.

Q What did you do to satisfy yourself that you could make that representation?

A To the best of my recollection, this representation seems to be a sort of mixed question of U.S. law and possibly Danish law.

For example, the words "qualifying U.S. pension fund," to the extent that that would be understood under U.S. law, I consulted with -- to the best of my recollection and belief, consulted with our internal -- our Kaye Scholer's internal pension experts Kathleen Wechter and Arthur Woodard.

And with respect to any issues of Danish law, I confirmed them with Jerome Lhote, who had represented to me that he had



those questions confirmed by Danish counsel.

Q Did you provide to Ms. Wechter or Mr. Woodard with the forms from the payment agents that you were signing?

MR. DEWEY: Objection.

A I don't have a specific recollection of whether I provided the forms to Mr. Woodard or Ms. Wechter or whether the client group, someone in the client group provided it, but I do have the impression that one or both of them saw the actual forms.

Q Sir, could I ask you, please, to turn to Exhibit 2110.

A 2110, I don't seem to have it here.

MR. DEWEY: It's one of the new ones. Here.

A I have the exhibit.

If you bear with me, I would like to read it.

Q I'm only going to ask you about your e-mail to Mr. Woodard on or about February 7, 2011.

A Yes, I understand that's the -- that's the exhibit.



I'm reading it now.

(Witness reviewing.)

Okay. I have read through the e-mail. I'm prepared for your questions.

Q Sir, in the second part of the page, there's a section that begins "By way of background."

Do you see that?

A I do.

Q And you say, "The contemplated transaction is an ex-dividend play that would take advantage of certain loopholes in German tax law and permit our clients to receive a tax refund from the German government for taxes that they did not in fact pay."

Now, do you see that?

A I do.

Q Had you ever previously been involved in any transaction where someone sought to receive a tax refund from a government for taxes that they did not in fact pay?

MR. DEWEY: Objection.

A So I don't have a specific recollection of this e-mail, but as I sit



here today, I believe that you're misinterpreting the phrase "tax refund from the German government for taxes that they did not that in fact pay."

That's a -- that would be my way of saying to another tax practitioner, as noted further in the e-mail, that the dividend tax was withheld at source, so that the client or the owner of the shares was not out-of-pocket for the tax paid.

Q The client had not paid the tax. Right?

A Oh, sure, he did. It was simply withheld at source by the company.

As a withholding -- whenever, under the general tax principles, an entity withholds tax, they're withholding it on behalf of the owner of the -- of the income, the owner of the dividend, which in this case would be the clients.

Q If you look at the bottom of the page, sir, you say, "Note that as mentioned above, the German company has paid a tax in respect of the dividend amount."

Do you see that?