**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:
18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-
01893; 19-cv-01781; 19-cv-01783; 19-cv-01866;
19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-
01904; 19-cv-01798; 19-cv-01869; 19-cv-01922;
19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-
07827; 19-cv-01791; 19-cv-01792; 19-cv-01928;
19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-
01929; 19-cv-01803; 19-cv-01806; 19-cv-01906;
19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-
01810; 19-cv-01809; 18-cv-04833; 19-cv-01911;
19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-
01871; 19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-
01931; 19-cv-01918; 19-cv-01873; 19-cv-01924;
19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
AND ARGUMENT CONCERNING EXTRATERRITORIAL CIVIL AND CRIMINAL
PROCEEDINGS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT ..............................................................................................................................7

CONCLUSION..........................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ........................................................................9

*FDIC v. St. Paul Fire & Marine Ins. Co.*, No. 3:95CV847(PCD),
   2000 WL 306939 (D. Conn. Feb. 2, 2000) ..................................................................................9

*Hughes v. Twenty-First Century Fox, Inc.*....................................................................................11

*In re Banco Bradesco S.A. Sec. Litig.* ..........................................................................................10

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS),
   2022 WL 4087842 (S.D.N.Y. Sep. 6, 2022)............................................................................8, 9

**Statutes**

Fed. R. Evid. 401 ...........................................................................................................................7

Fed. R. Evid. 403 ...........................................................................................................................9

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendants' motion *in limine* to exclude evidence and argument concerning foreign civil, criminal, and regulatory proceedings.

## PRELIMINARY STATEMENT

Defendants' motion seeks to exclude wholesale all evidence or argument concerning foreign civil, criminal, or regulatory proceedings related to defendants' fraudulent tax refund claims and fictitious trading in Danish shares. SKAT likewise has moved *in limine* to exclude evidence of reports issued by the Danish National Audit Office and the Danish Ministry of Taxation's internal audit department as irrelevant and unfairly prejudicial, including because of the risk the jury would adopt the reports' conclusions instead of making its own determinations based on the evidence admitted at trial.[1] But if the Court permits defendants to introduce Danish government reports at trial, the Court also should permit SKAT to introduce the U.K. Financial Conduct Authority's Final Notices to four of the executing brokers that participated in defendants' fictitious trading at the Solo custodians and to the chief executive of Indigo Securities Limited, which issued dividend credit advices to one of the plans whose refund claims are at issue at trial. And, in any event, defendants' motion should be denied as it relates to the Danish criminal fraud convictions of North Channel Bank, which issued dividend credit advices to two of the plans at issue in this trial, and Anthony Mark Patterson, a former employee of Solo and Sanjay Shah who organized the fraudulent trading.[2]

---

1.  *See generally* ECF No. 1141.

2.  SKAT does not intend to offer at trial evidence related to any foreign "civil, criminal, or regulatory proceedings" involving Matthew Stein, Jerome Lhote, Luke McGee, Maple Point, Maple Bank, Freshfields, Guenthar Klar, or ED&F Man Capital Markets. (Defs. Br. 1-2.)

Despite all evidence to the contrary, defendants continue to assert that their pension plans' purported trading in Danish securities was not fictitious, and that their representations to SKAT that they were the owners of the securities identified in each of their reclaim applications were not false.  Thus, evidence of the FCA's findings and North Channel Bank's and Patterson's criminal convictions are highly relevant to SKAT's claims that defendants' representations in their tax refund claims that the plans owned Danish shares on which they received dividends, net of withholding tax, were false.  Corroborating the Solo trading records recovered from Shah's Elysium companies in Dubai, the FCA found that the purported Solo trading was circular and that there was no evidence the Solo custodians ever held any shares.  Similarly, with respect to Indigo, the FCA concluded that the underlying trading was not genuine, and its sole purpose was to create false dividend credit advices to submit to SKAT.  And both North Channel Bank and Patterson's guilty pleas that led to their convictions were based on their participation in fictitious trading.

The probative value of such evidence is not, as defendants argue, substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  A limiting instruction that the evidence is offered only for the falsity of the defendants' representations, not for their knowledge or intent, can mitigate any risk of "guilt by association." And defendants fail to explain why any differences in "standards of proof" or "procedural safeguards" in Denmark or the U.K. make the evidence unfairly prejudicial or even whether there are any such relevant differences.  Nor will admitting the FCA's findings mean the parties will have to "relitigate" the FCA's investigations.  The FCA's relevant findings relate to the same fraudulent scheme the parties already are litigating.  And the same is true with respect to

evidence of North Channel Bank's and Patterson's criminal convictions, which, in any event, were based on guilty pleas.

## BACKGROUND

### North Channel Bank's September 2019 guilty plea.

North Channel Bank issued dividend credit advices that defendants submitted to SKAT in certain of the Omineca Pension Plan and Vanderlee Technologies Pension Plan's tax refund claims at issue in this trial. On September 23, 2019, North Channel Bank pleaded guilty before the Danish District Court in Glostrup, Denmark to charges of criminal fraud of a particularly aggravating nature under the Danish Criminal Code. (Declaration of Marc A. Weinstein, dated September 3, 2024 ("Weinstein Decl."), Ex. 1.) The bank was represented at the hearing before the Danish court by its managing director Gunnar Volkers, who joined the bank in 2017 (after the fraud was over).

As Mr. Volkers testified at his deposition, the bank was charged with "collusive serious fraud against the Danish state" and the bank's new management "accepted that" and "pleaded guilty on behalf of the bank." (Weinstein Decl. Ex. 2 (Volkers Dep. Tr.) 71:2-13.) The dividend credit advices the bank issued to the Omineca and Vanderlee plans all were false because the bank never held any Danish shares or received any dividend payments on the plans' behalf. (*Id.* at 18:8-45:8.) The plans' purported trading at the bank was a "circular setup" that all "add[ed] up to zero." (*Id.* at 19:16-20:17, 76:10-77:14.) And the trading was "fictitious" in that "there were no shares" and no "real money was credited" to the plans' "account[s]." (*Id.* at 56:18-57:3.)

As Mr. Volkers testified, the bank's new management concluded "that the dividend credit advices were produced only for one single reason," *i.e.*, "to show amounts deducted from the gross dividend as withholding tax to be presented . . . to Danish and also Belgian tax authorities."

3

(*Id.* at 74:16-75:2.)  But "[s]ince there ha[d] not been any dividends, there ha[d] not been any taxes paid" and "there was no reason for reclaiming anything."  (*Id.*)  Thus, the bank's new management "were convinced that this [was] fraud and that the bank was deeply involved in the setup of a fraudulent business," so Mr. Volkers pleaded guilty on the bank's behalf to the Danish criminal charges.  (*Id.* at 75:2-4.)  Defendants had the opportunity to cross-examine Mr. Volkers at his deposition as to the basis for the bank's guilty plea or whether that plea to serious fraud of a particularly aggravating nature encompassed something significantly different than the elements of criminal fraud in the United States.

**The FCA's Final Notices to defendants' executing brokers.**

From 2021 to 2023, the U.K. Financial Conduct Authority issued "Final Notices" to four of the executing brokers—Sapien Capital Limited, Sunrise Brokers LLP, The TJM Partnership Limited, and Bastion Capital London Ltd.—that participated in defendants' supposed trading at the Solo custodians, finding that the brokers "had inadequate systems and controls to identify and mitigate the risk of being used to facilitate fraudulent trading and money laundering" and "did not exercise due skill, care and diligence in applying [their] AML policies and procedures, and in failing to properly assess, monitor and mitigate the risk of financial crime in relation to the Solo Clients and the purported trading."  (Weinstein Decl. Ex. 3 ¶ 2.2; *see also id.* Exs. 4 ¶ 2.2; 5 ¶ 2.2; 6 ¶ 2.2.)

In particular, the FCA found that the "Solo Trading was characterized by a purported circular pattern of extremely high value OTC equity trading, back-to-back securities lending arrangements and forward transactions."  (Weinstein Decl. Exs. 3 ¶ 2.5; 4 ¶ 2.5; 5 ¶ 2.5; 6 ¶ 2.5.)  The FCA "refer[red] to the trading as 'purported'" because it "found no evidence of ownership of the shares by the Solo Clients, or custody of the shares and settlement of the trades by the Solo

Group." (Weinstein Decl. Exs. 3 ¶ 2.10; 4 ¶ 2.10; 5 ¶ 2.10; 6 ¶ 2.10.)  And it concluded that the supposed "combined volume of the Cum-Dividend Trading across" six brokers that participated in the trading, *i.e.*, "between 15-61% of the shares outstanding in the Danish stocks traded," to be "implausible." (Weinstein Decl. Exs. 3 ¶ 2.7; 4 ¶ 2.7; 5 ¶ 2.7; 6 ¶ 2.7.)

The FCA's "investigation and conclusions in respect of the purported trading" were "based on a range of information including, in part, analysis of transaction reporting data, material received from" Sapien, Sunrise, TJM, Bastion, "the Solo Group," and two "other Broker Firms that participated in the Solo Trading." (Weinstein Decl. Exs. 3 ¶ 2.7; 4 ¶ 2.7; 5 ¶ 2.7; 6 ¶ 2.7.)  And the "Relevant Period" for its investigations ranged from January 2014 to November 2015, depending on when the particular broker started participating, until after the trading ceased. (Weinstein Decl. Exs. 3 ¶ 3.1; 4 ¶ 3.1; 5 ¶ 3.1; 6 ¶ 3.1.)

**The FCA's Final Notice to Indigo's sole controller and chief executive Nailesh Teraiya.**

On September 22, 2023, the FCA issued its Final Notice to Nailesh Teraiya, the "sole controller and chief executive" of "Indigo Global Partners Limited (formerly known as Indigo Securities Limited)," (Weinstein Decl. Ex. 7 ¶¶ 2.1, 3.1), which issued the dividend credit advices that defendants submitted to SKAT in certain of the Routt Capital Pension Plan's refund claims.

The FCA found that "Mr. Teraiya presided over the participation by [Indigo] in an equities trading strategy which resulted in claims upon the Danish exchequer, based on misleading documents produced by [Indigo], amounting to €91.247m." (*Id.* ¶ 2.1.)  "The Trading Strategy purported to be a dividend arbitrage equity trading strategy," but the FCA determined that rather than a "genuine" strategy, it was "a mechanism for producing a document, known as a Dividend Credit Advice Slip . . . falsely certifying that the US Pension Plans owned

large quantities of Danish shares, that dividends had been received by the US Pension Plans and that tax had been withheld by the issuer on behalf of the Danish authorities." (*Id.* ¶ 2.3.)

"[T]he Purported Trading . . . proceed[ed] in a predetermined, circular and centrally-controlled pattern, such that the trades netted off to zero without any money or shares changing hands." (*Id.* ¶ 2.8.)  "[N]o dividend payments were received by [Indigo], or notified to [it] in its purported role as custodian" for the trading. (*Id.*)  The "US Pension Plans" that participated in the "Trading Strategy" "were far too small to finance the trades" and the other participants "had no realistic prospect of finding sufficient shares in the market to fill them." (*Id.* ¶ 2.6.)  For instance, between March 14 and August 7, 2014, Indigo "purported to settle cum-dividend equity trades in Danish equities on behalf of its Clients to the value of £15.7 billion," which had they been "genuine," "would have represented up to 13.6% of the shares outstanding in the companies listed on the Danish Stock Exchange" and "equated to an average of 26 times the total number of all shares traded in those stocks on European exchanges." (*Id.* ¶ 2.5.)

**Anthony Mark Patterson's March 2024 guilty plea.**

On March 1, 2024, the Danish District Court in Glostrup, Denmark issued a criminal judgment against Anthony Mark Patterson based on his guilty plea to charges of "complicity in fraud of a particularly aggravating nature" and "[a]ttempted complicity in fraud of a particularly aggravating nature" under the Danish Criminal Code. (Weinstein Decl. Ex. 8.)  Patterson was "an employee or consultant of companies belonging to Sanjay Shah," *i.e.*, the Solo custodians, who "assisted in the organisation and operation of a closed trading system within the framework of the companies owned by Sanjay Shah . . . through which the investors entered into agreements for the purchase of Danish listed shares at a time when the shares were traded with dividend

rights, which trades were fictitious or of such nature that the investors did not thereby receive any dividends from the issuer of the shares or a right thereto." (*Id.* at 1.)

## ARGUMENT

There is no merit to defendants' conclusory arguments that the FCA's Final Notices and North Channel Bank's and Patterson's guilty pleas "are not germane to Defendants or to any of the issues in the consolidated trial." (Defs. Br. 2.) The FCA's investigative findings and North Channel Bank's and Patterson's criminal convictions have substantial probative value with respect to SKAT's claims that defendants' representations of share ownership and dividend receipt in their tax refund claims were false. Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Contrary to defendants' arguments, these matters do not just concern some "extraterritorial dividend arbitrage related Foreign Proceedings involving nonparties to this litigation." (Defs. Br. 2.) For instance, the executing brokers Sapien, Sunrise, TJM, and Bastion that were the subjects of the FCA's investigations are the very same brokers through which the defendants purported to buy Danish shares they represented to own in certain of the tax refunds claims that will be at issue at trial and that issued trade confirmations defendants claim evidence share ownership. (Weinstein Decl. Exs. 9; 10; 11.)[3] The FCA's conclusion that the "Solo Trading" in which those brokers participated was "circular" based on "transaction reporting

_____

3. In the latter part of the fraud, the Solo circular trading included multiple brokers in between the pension plan and the short seller for no apparent purpose other than to add complexity and obfuscate the circular nature of the transactions. Thus, while Sapien was never a direct counterparty to any of defendants' trades, it did act as the second broker in certain of the loops, *i.e.*, the pension plan purportedly purchased shares from a first broker, which supposedly purchased the shares from Sapien, which supposedly purchased the shares from the short seller. (*See* Weinstein Decl. Exs. 12 (May 6, 2015 trade confirmation of Aerovane plan purportedly purchasing 885,045 COLOB shares from Bastion); 13 (May 6, 2015 trade confirmation of Bastion purportedly purchasing 885,045 COLOB shares from Sapien).

data" and "material received from" the brokers and "the Solo Group" concerns the very same "purported" trading in which defendants participated too and that will be at issue at trial, and it corroborates that the Solo trading records recovered from Elysium showing the same are authentic. (Weinstein Decl. Exs. 3 ¶¶ 2.5, 2.9; 4 ¶¶ 2.5, 2.9; 5 ¶¶ 2.5, 2.9; 6 ¶¶ 2.5, 2.9.) And the "Solo Clients" for which the FCA "found no evidence of ownership of shares" or "custody of the shares and settlement of the trades by the Solo Group" on their behalf include the defendants' plans. (Weinstein Decl. Exs. 3 ¶ 2.10; 4 ¶ 2.10; 5 ¶ 2.10; 6 ¶ 2.10.)

The same is true with respect to the FCA's Final Notice to Indigo's chief executive Teraiya finding that the Indigo trading was not "genuine" and North Channel Bank's and Patterson's criminal fraud convictions. Indeed, defendants all but admit the relevance of the evidence in noting that they "do not seek to exclude evidence or argument related to the fact that Sanjay Shah and/or Solo Capital have been charged with violations of criminal and civil law in foreign proceedings." (Defs. Br. 2 n.1.) Indigo and North Channel Bank issued the fraudulent dividend credit advices that defendants submitted to SKAT in three of the pension plans' refund claims at issue in this trial and played the same role as Solo did with respect to those particular refund claims. And Patterson was Shah's employee who assisted in prearranging the circular trading at the Solo custodians. (Weinstein Decl. Ex. 8 at 1.)

The FCA specifically found that the Indigo dividend credit advices the defendants submitted to SKAT "falsely certif[ied] that the US Pension Plans owned large quantities of Danish shares, that dividends had been received by the US Pension Plans and that tax had been withheld by the issuer on behalf of the Danish authorities." (Weinstein Decl. Ex. 7 ¶ 2.3.) And the "guilty pleas of" North Channel Bank and Patterson "include as part of their factual bases," *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2022 WL

4087842, at *2 (S.D.N.Y. Sep. 6, 2022), that the trading was "fictitious." (Weinstein Decl. Ex. 1 at 3 (North Channel Bank fraud was committed "by means of hundreds of fictitious stock trades"); Ex. 8 at 1 (the Solo trading was "fictitious or of such nature that the investors did not thereby receive any dividends").) Thus, "[e]vidence of the . . . guilty pleas" and the FCA's findings with respect to Indigo "is highly probative of" whether defendants' representations in the tax refund applications were true. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 4087842, at *3.[4]

Nor is the significant probative value of this evidence, as defendants argue, "substantially outweighed by a danger of" "unfair prejudice, confusing the issues," or "misleading the jury." Fed. R. Evid. 403. "[V]irtually all evidence is prejudicial to one party or another," so "to justify exclusion under Rule 403 the prejudice must be *unfair*," *i.e.*, the evidence must have "some adverse effect beyond tending to prove a fact or issue that justifies admission." *Costantino v. Herzog*, 203 F.3d 164, 174-75 (2d Cir. 2000). And there is nothing unfair about the evidence of the FCA's findings with respect to the Solo and Indigo trading or North Channel Bank's and Patterson's criminal convictions following their guilty pleas based on their participation in the very fictitious trading that is at issue in this trial. Such evidence tends to prove that defendants' representations of share ownership and dividend receipt in their tax refund claims were false. To the extent defendants are concerned about "guilt by association," that "could be mitigated, for example, with a jury instruction that the" evidence is offered only with respect to the truth of defendants' representations, not to defendants' knowledge or intent. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 4087842, at *3.

---

4.  *See also FDIC v. St. Paul Fire & Marine Ins. Co.*, No. 3:95CV847(PCD), 2000 WL 306939, at *3 (D. Conn. Feb. 2, 2000) (guilty plea of non-party was admissible evidence of whether he "falsely inflate[d] financial statements").

Defendants' argument that the introduction of this evidence would be "especially problematic" because "dramatically different" "standards of proof" and "procedural safeguards" apply in Denmark and the U.K. leaves unexplained what those differences supposedly are or why any such differences would matter here.  (Defs. Br. 3.)  And, in any event, *In re Banco Bradesco S.A. Securities Litigation*, (Defs. Br. 3), does not support defendants' argument.  In *In re Banco Bradesco*, the court held that the Brazilian court's decision to dismiss criminal charges against the defendant "may be relevant on summary judgment or at trial," but it did not have "any impact" on the court's disposition of the defendant's Rule 12(b)(6) motion to dismiss where the allegations in the complaint must be accepted as true.  277 F. Supp. 3d 600, 637 (S.D.N.Y. 2017).[5]  SKAT seeks to admit evidence from foreign proceedings for the jury to consider at trial, not as evidence on a dispositive motion where the Court must consider the evidence in the best light for the defendants.

Also "especially problematic," defendants argue, is the fact that defendants were "not parties" to the FCA regulatory and Danish criminal proceedings.  (Defs. Br. 3-4.)  But SKAT likewise was not a party to those proceedings and so cannot be faulted for not having produced to defendants "all documents, testimony, and other evidence from" them.  (Defs. Br. 3.)  Nor would introduction of the FCA's findings and the criminal convictions require the parties to "re-litigate cum-ex matters that have played out across the globe."  (Defs. Br. 3.)  The evidence SKAT seeks to introduce at trial concerns the same fraudulent scheme in which SKAT claims defendants participated.  And with respect to the testimony of North Channel Bank's

---

5.  The *In re Banco Bradesco* court also reasoned that the Brazilian's court dismissal of the charges did not mean "that the alleged misconduct did not occur" and the Brazilian court's "mandate to always give maximum consideration to that which the defense has also presented" stood in contrast to the preponderance of the evidence standard applicable in a U.S. civil action.  *Id.* (quotations omitted).

representative concerning the bank's guilty plea, defendants had the opportunity to examine the witness at his deposition.

For the same reason, none of this evidence is likely to confuse or mislead the jury.  (Defs. Br. 4.)  As defendants aptly state, "[a]t issue in this consolidated trial is whether Defendants engaged in a [fraudulent] tax refund scheme" and "whether Defendants are liable to SKAT under U.S. law."  (Defs. Br. 4 (emphasis removed).)  The evidence at issue tends to prove that defendants' tax refund claims were false and that they are liable to SKAT under U.S. law.  There is nothing confusing or misleading about it.[6]

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court deny defendants' motion with respect to (1) the FCA's final notices if the Court permits the introduction of foreign agency findings; and (2) North Channel Bank's and Patterson's criminal convictions.

---

6.  *Hughes v. Twenty-First Century Fox, Inc.*, (Defs. Br. 4), is far afield.  In *Hughes*, the court held that evidence the defendant sought to subpoena would "detract . . . from the real issues" in the case because it consisted of "sexual or romantic communications," "information regarding [plaintiff's] personal background and reputation, and media files of a sexual or romantic nature depicting" plaintiff.  327 F.R.D. 55, 56-58 (S.D.N.Y 2018).

Dated:    New York, New York
          September 3, 2024

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein
     William R. Maguire
     Marc A. Weinstein
     Neil J. Oxford
     Dustin P. Smith
     Gregory C. Farrell
     One Battery Park Plaza
     New York, New York 10004-1482
     Telephone: (212) 837-6000
     Fax: (212) 422-4726
     bill.maguire@hugheshubbard.com
     marc.weinstein@hugheshubbard.com
     neil.oxford@hugheshubbard.com
     dustin.smith@hugheshubbard.com
     gregory.farrell@hugheshubbard.com

     *Counsel for Plaintiff Skatteforvaltningen
     (Customs and Tax Administration of the
     Kingdom of Denmark)*

12