# Exhibit 116

| | |
|---|---|
| From: | Jérôme LHOTE </O=OEXCH029/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JLHOTE@ARGRE810> |
| To: | Richard Markowitz; John H. van Merkensteijn, III; Adam Larosa |
| Sent: | 3/12/2013 3:56:41 PM |
| Subject: | FW: Our call of today |

fyi

-----Original Message-----
From: Emilie.MAES@freshfields.com [mailto:Emilie.MAES@freshfields.com]
Sent: Tuesday, March 12, 2013 1:05 PM
To: Jérôme LHOTE
Cc: Matthew Stein; robert.neyt@freshfields.com; axel.haelterman@freshfields.com
Subject: RE: Our call of today

Dear Jérôme,

I refer to our conversation from last week.

The beneficial ownership provision contained in article 106, §4 of the Royal Decree implementing the Belgian Income Tax Code 1992 (RD/BITC) provides that the withholding tax exemption of article 106, §2 RD/BITC is disallowed if the recipient of the dividend, whilst holding (the ownership of) the shares in its own name, is under a contractual obligation to pay over the dividend income (i.e. the revenue on the Belgian shares) to an ultimate beneficiary. This exclusion essentially aims at the situation where the holder of the shares has issued share certificates to third parties for the account of which he would be holding the shares. Such third parties would traditionally either have financed the share acquisition or have initially transferred the shares to such holder.

The fact that the holder of the shares would have sought external funding (leverage) for acquiring the shares, should not impact on its ability to claim the withholding tax exemption. Where any such borrowing would take the form of a profit participating loan, care should be taken that such profit participation does not actually lead to an obligation to pay on the dividend or a fixed part of it to such lender. Until recently, taking the dividend coupon into account as one of the elements in order to calculate the profit sharing entitlement of the lender, would not have impacted the possibility to claim the withholding tax exemption. Today, under the new anti-misuse provision, each situation should be carefully reviewed in order to ascertain that such arrangement would not be "frustrating" the intent of the legislative provision including provisions that do not explicitly refer to a profit sharing entitlement based on the received dividends.

Since the exclusion focuses on the obligation to pay over the dividend to a third party, it is important that any hedge contract is actually functioning as a market value guarantee, and does not imply the paying over of the income on the shares. The Hedge should allow the pension to obtain the dividend on the shares for its own account, even though, obviously, the market value taken into account in the framework of the hedge will refer to an expected dividend value on the shares.

Also, the effective ownership of the pension fund over the shares (required in article 106, §2 RD/BITC) should, as a rule, imply that the acquisition set up (and its financing) as well as the hedge under the transaction, are such that the pension fund, after having acquired the shares, is legally clearly at liberty to hold on to the shares for an undetermined period of time, in such a manner that it has effective control over what will eventually happen to these shares. This would habitually exclude a financing arrangement that would necessarily lead to an obligation to sell the shares at the end of such "closed end" financing period. Traditionally this would also, and more generally, exclude that at the moment of the acquisition of the shares the pension fund immediately enters into a physically settled forward sale.

The analysis of cash settled hedges is different, since a pension fund should in principle remain effective legal owner of the underlying assets (i.e. the shares and all other assets that it holds) under the terms of these derivative instruments. In case of a cash settlement, one party pays the other the difference between the market price of the relevant underlying asset and the agreed price. However, the underlying assets are not actually delivered. Therefore, subject to the case per case review presently required under the general anti-misuse provision, entering into the cash settled hedge should not lead to the conclusion that the pension fund has no effective ownership over the shares and should therefore not endanger the application of the exemption contained in article 106, §2 RD/BITC.

Please do not hesitate to contact us should you require more information regarding the above.

Best regards,

Axel - Robert - Emilie

-----Original Message-----
From: Jérôme LHOTE [mailto:jlhote@argremgt.com]
Sent: vrijdag 8 maart 2013 16:02
To: MAES, Emilie
Cc: Matthew Stein; NEYT, Robert
Subject: Our call of today

Thank you Emilie for your time. It was very useful and now we have a much better understanding of the disposition.
We would appreciate if you could send us in email your understanding of it, confirming what it addresses and tackles.

Best regards,

Jerome LHOTE
Argre Management LLC
Tel:  +1 212 247 2600
Cell: +1 917 640 9365

This email is confidential and may well also be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply email and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person: to do so could be a breach of confidence. Thank you for your co-operation. Please contact our IT Helpdesk on +44 (0) 20 7785 2000 or email ITHelpdesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority. In Belgium, it is registered with the RPM/RPR Brussels number 0538 335 152 and professional rules are available at www.barreaudebruxelles.be and www.baliebrussel.be. For regulatory information please refer to www.freshfields.com/support/legalnotice.

A list of the members (and of the non-members who are designated as partners) of Freshfields Bruckhaus Deringer LLP and their qualifications is available for inspection at its registered office, 65 Fleet Street, London EC4Y 1HS. Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or entities.

CONFIDENTIAL                                                                                                              WH_MDL_00474372