UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND                    18-md-2865 (LAK)
LITIGATION

This paper applies to:    Trial One Cases[1]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:

William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
HUGHES HUBBARD & REED LLP
*Attorneys for Plaintiff*


Sharon L. McCarthy
Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ & FINK, LLP
*Attorney for Defendants John van Merkensteijn, III,
Elizabeth van Merkensteijn, Azalea Pension Plan,
Basalt Ventures LLC Roth 401(K) Plan, Bernina
Pension Plan, Bernina Pension Plan Trust, Michelle
Investments Pension Plan, Omineca Pension Plan,*

---

[1] 18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339.

*Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
Nelson S. Castano
Andrew S. Dulberg
Brittany R. Warren
WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorney for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Trust*

David L. Goldberg
Michael M. Rosensaft
KATTEN MUNCHIN ROSENMAN LLP
*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*

Elliot R. Peters
Julia L. Allen
Niharika S. Sachdeva
KEKER, VAN NEST & PETERS LLP

Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP

*Attorneys for Defendant Michael Ben-Jacob*

LEWIS A. KAPLAN, *District Judge.*

Before the Court is plaintiff's motion *in limine*[2] "to preclude the [so-called] advice of counsel defense of defendants Richard and Jocelyn Markowitz, John and Elizabeth van Merkensteijn, Robert Klugman and any of their pension plans or other entities . . . with respect to their misrepresentations of share ownership and dividend receipt in the tax refund claims."[3] Although defendants disclaim a "formal" advice-of-counsel "defense," they proffer evidence of counsel's participation and communications that they argue would be relevant at trial. Plaintiff seeks to bar that as well. For the reasons explained below, the motion is granted in part and denied in part.

*Facts*

Plaintiff, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT"), alleges that defendants, including pension plans as well as their principals, agents, and representatives, participated in a series of transactions designed to defraud it. Relevant here, plaintiff has asserted claims for fraud, aiding and abetting fraud, unjust enrichment, and negligent misrepresentation.

Plaintiff alleges specifically that defendants "falsely represented that the plans owned shares in Danish companies, that [Danish] taxes had been withheld on the dividends, and as tax-exempt entities, they were entitled to refunds."[4] It contends further that defendants'

---

2

   Dkt 1123.

3

   Dkt 1125 (Pl. Mem.) at 1. Plaintiff "did not move to preclude [Defendant] Ben-Jacob from offering such evidence at trial." Dkt 1215 (Pl. Reply); *see* Dkt 1200 (Ben-Jacob Resp.).

4

   Dkt 1 (Transfer Order) at 1.

4

representations, made in tax refund claims filed with it, were false because the plans never had owned the securities in question. Rather, defendants allegedly employed a tax dividend arbitrage trading strategy — a strategy in which they are said to have engaged in "fictitious, circular transactions that did not result in the defendant plans owning any Danish shares or receiving any dividends on Danish shares from which tax was withheld" — to create the false appearance of share ownership and dividend receipt.[5] Plaintiff claims that as a result of the fraud, it paid defendants over 12.7 billion Danish Kroner, the equivalent of approximately $2.1 billion, to which they were not entitled.

At the heart of this scheme allegedly was Sanjay Shah and his company Solo Capital. Shah and Solo conceived of, developed, and facilitated the alleged fraudulent scheme in exchange for a significant share of the profits.[6] Although neither Shah nor Solo is a party here, both have faced significant legal jeopardy in other courts. Most notably, Shah is currently on trial for criminal fraud in Denmark and civil fraud in the United Kingdom. In addition, Shah, Solo, and other defendants were found liable to SKAT in Dubai and ordered to pay approximately $1.3 billion.[7]

The motion now before the Court concerns what will be the first trial in this multidistrict litigation. As noted, plaintiff has moved *in limine* to "preclude Defendants from arguing

---

[5]

     *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2024 WL 3184978, at *2 (S.D.N.Y. June 26, 2024) (internal quotation marks omitted).

[6]

     *See* Dkt 980 at 1.

[7]

     *See* Dkt 976 at 1–2; Kirstin Ridley, *Hedge Fund Founder, Fighting $1.8 Billion UK Tax Fraud Case, Says He Acted Honestly*, Reuters (May 21, 2024), https://www.reuters.com/world/uk/hedge-fund-founder-fighting-18-billion-uk-tax-fraud-case-says-he-acted-honestly-2024-05-21/.

at trial that they relied on the advice of counsel in representing to SKAT that the pension plans were beneficial owners of Danish shares and dividends because [defendants] never received any such advice on which they could have relied."[8]  It moves also to preclude any evidence or argument of any law "firm's involvement" in activities antecedent to or in furtherance of the representations defendants made to SKAT on the ground that any such involvement would be "irrelevant to Defendants' *scienter* with respect to those misrepresentations and would be unfairly prejudicial to SKAT."[9]

Defendants argue that the motion should be denied because they do not intend to assert that any attorneys were aware that the pension plans never had owned the Danish securities in question and thus never had received associated dividends.  Rather, defendants aver that they *believed* that they were beneficial owners of the securities and, therefore, that the legal advice and involvement upon which they claim to have relied is evidence of good faith belief in the truth of their representations.  Defendants state that they would seek "to elicit testimony as to the intense involvement of multiple U.S. and foreign law firms when the [trading] strategy was introduced to them and during its administration and execution," which, they say, would be "essential for the jury's determination of each Defendant's state of mind."[10]  They explain their theory of relevance as

---

[8]     Dkt 1125 (Pl. Mem.) at 2–3.

[9]     *Id*. at 5 (italics added).

[10]    Dkt 1161 (Def. Opp.) at 2.

Defendants argue also that the motion "should be denied as moot because Defendants are not asserting the advice of counsel defense that SKAT is attempting to preclude." *Id.* The Court rejected this contention in a prior order.  Dkt 1172 at 1.

6

follows:

> "Defendants expect the evidence to show that they had a good faith belief that the representations made in the reclaim forms submitted to SKAT were accurate. The lengths to which Defendants went to hire attorneys to ensure that the pension plans were properly qualified, confirm that the plans satisfied the requirements of the tax treaty between the United States and Denmark, make certain the trade strategy adhered to relevant U.S. and foreign securities laws, and involve lawyers in the execution of the strategy are all evidence of Defendants' lack of intent to defraud SKAT."[11]

In a previous order, the Court observed that it then was not clear from the briefing to that point what "evidence and argument defendants seek to introduce" and ordered defendants to file "a complete offer of proof."[12] Defendants did so in 2,328 pages of proffered evidence and argument.[13]

Plaintiff objects to four categories of evidence contained in those voluminous proffers:

> (1)    Three legal opinions produced for non-parties to these cases by Danish law firm Hannes Snellman in 2012, 2013, and 2014 regarding Danish law applicable to claims of beneficial ownership of securities.

---

[11]    Dkt 1161 (Def. Opp.) at 3–4.

[12]    Dkt 1172 at 2.

[13]    Dkt 1202 (Klugman Offer); Dkt 1204 (Markowitz Offer).

7

    (2)      A legal opinion of the Danish law firm Bech-Bruun regarding a non-party German merchant bank's potential liability for acting as a custodian in certain Danish securities transactions executed on behalf of U.S. pension funds.

    (3)      Evidence of attorneys' involvement in dividend arbitrage transactions in Germany and Belgium which, defendants say, were similar to the Danish transactions in which they engaged.

    (4)      Evidence that defendants' attorneys at American law firm Kaye Scholer were involved in administering and providing U.S. law advice concerning their dividend arbitrage transactions.[14]

*Discussion*

## I.    *Legal Standard*

Evidence is relevant — and thus presumptively admissible — if it tends to make a fact of consequence more or less probable.[15]  But Federal Rule of Evidence 403 provides that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury," among other things.

It has been more than a century since the Supreme Court famously wrote in *United States v. Williamson* that,

"[1] if a man honestly and in good faith seeks advice of a lawyer as to what he may

---

[14]    *See* Dkt 1215 (Pl. Reply).

[15]    Fed. R. Evid. 401, 402.

lawfully do in the matter of loaning money to applicants under it, and [2] fully and honestly lays all the facts before his counsel, [3] and in good faith and honestly follows such advice, [4] relying upon it and believing it to be correct . . . he could not be convicted of crime which involves wilful and unlawful intent; even if such advice were an inaccurate construction of the law."[16]

This principle — often misleadingly referred to as the "advice-of-counsel defense" — has come down to us in substantially the same form.[17]  But it is not truly a defense.

As the Second Circuit explained:

"An affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.  In a fraud case, however, the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's [or plaintiff's] allegations as true.  Rather, the claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government [or plaintiff] has proved the required element of the offense that the defendant had an 'unlawful intent.'"[18]

While this much is clear, ambiguity persists regarding the proper role of the factors

---

[16]
    207 U.S. 425, 453 (1908).

[17]
    *See, e.g.*, *United States v. Bankman-Fried*, No. S5 22-cr-0673 (LAK), 2024 WL 477043, at *2 (S.D.N.Y. Feb. 7, 2024).

[18]
    *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (internal quotation and alteration marks and citations omitted).

long ago enumerated in *Williamson* and restated in various ways in the years since. The factors often are used as a standard against which a defendant's entitlement to an advice-of-counsel jury instruction is measured. Typically, such an instruction provides in substance that a "defendant cannot be convicted of a crime that involves willful and unlawful intent, even if such advice were an inaccurate construction of the law," if the jury is persuaded that the *Williamson* factors were satisfied.[19] In a few other cases, the *Williamson* factors arguably have been used to determine the *admissibility of evidence* of attorneys' advice or involvement introduced for the purpose of negating a claim of fraudulent intent or bad faith. For example, in *S.E.C. v. Lek Securities Corporation*, the court excluded such evidence, explaining that it would not be "relevant in the absence of an advice-of-counsel defense."[20]

      Here, the Court considers the question of the extent, if any, to which the *Williamson* factors properly bear on the admissibility of evidence and argument pertaining to the advice, presence, and involvement of counsel.

      The most relevant criteria, of course, are Federal Rules of Evidence 401 and 403. When a defendant seeks to introduce evidence of the role or presence of lawyers that falls short of satisfying each of the *Williamson* factors, the theory of relevance usually is that the evidence is probative of the defendant's good faith. No doubt the *Williamson* factors, to the extent they are satisfied, may bear on the defendant's state of mind, and therefore are pertinent. But so too are respects in which the *Williamson* factors are not satisfied, as evidence of the role or presence of

---

[19]     *Id*. at 477–78.

[20]     17-cv-1789 (DLC), 2019 WL 5703944, at *3–4 (S.D.N.Y. Nov. 5, 2019).

lawyers that falls short of satisfying all of the *Williamson* factors in some circumstances can pose particular risks of ills against which Rule 403 is intended protect including "a substantial risk of misleading the jury" by "suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events."[21]   As Judge Forrest explained in *S.E.C. v. Tourre*, a "jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction."[22]

Take this example.  A defendant and cohorts, unknown to the defendant's lawyer, fraudulently obtain a great deal of money by defrauding others.  While the fraud is under way, the defendant and cohorts consult a lawyer to facilitate the purchase of assets in which to invest the ill gotten gains.  The fraud and the investments overlap in time and run from the same offices.  The lawyer often is present in the offices at meetings concerning the investments, but does not witness and remains entirely ignorant of the manner in which the cash used to pay for the investments was obtained.

In such circumstances, evidence of the lawyer's frequent presence in the offices, his frequent meetings with the defendant and his cohorts, and so on would have little or no probative value with respect to the defendant's state of mind in obtaining from others the money to make the investment.  Permitting evidence of the lawyer's presence would risk jurors concluding that the lawyer had "signed off" on or was involved otherwise in the entire chain of events.  Even if jurors

---

[21]    *Bankman-Fried*, 2024 WL 477043, at *3.

[22]    950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

did not go so far, introduction of that evidence would be a waste of time and threaten confusion, thus likely warranting exclusion under Rule 403. So the bottom line in this example is that evidentiary rulings with respect to this sort of evidence must turn on careful assessments of the probative value of the proffered evidence and its balance against any risk of substantial unfair prejudice or other factors relevant under Rule 403.

To be sure, the *Williamson* factors are pertinent to this process. Evidence that a defendant relied in good faith on the advice of his counsel that certain conduct, about which the defendant knew that the lawyer was fully and accurately informed, for example, could be highly probative of a defendant's good faith. In other circumstances, where a defendant fails to offer evidence of one or more of the *Williamson* factors, the probative value may be less and the Rule 403 balancing might dictate excluding the evidence. Importantly, there may be times when evidence does not satisfy each of the *Williamson* factors but nonetheless should be admitted because it is probative and does not pose an inordinate risk of unfair prejudice or misleading the jury.

Take another example. In *United States v. Bankman-Fried,* the Court incorporated the *Williamson* factors into its Rules 401 and 403 analyses of the defendant's proffered testimony that attorneys were involved in drafting the terms of service of his failed cryptocurrency exchange, FTX. He argued that this testimony was relevant to his good-faith belief that he understood the terms of service to permit his cryptocurrency trading firm, Alameda Research, to borrow vast sums from FTX customer deposits. The Court rejected this contention, finding that "[t]he defense theory of relevance — that attorneys' involvement in drafting the terms of service reassured [defendant] that his conduct was proper — was fatally undermined by the defendant's own admission that he did not discuss the charged conduct (*i.e.*, permitting Alameda to take vast sums of FTX customer deposits)

with counsel."[23]  Simply put, the probative value of the proffered evidence was diminished by the fact that defendant did not believe that he or anyone else had made a full disclosure of material facts to his lawyers.  As the defendant "could not have taken comfort in conversations he never had," the Court explained, "[a]ny probative value would have been outweighed significantly by the risk . . . of confusing the jury and unfairly prejudicing the government."[24]

In sum, defendants are not necessarily precluded from introducing evidence or argument concerning the impact of the advice of counsel or involvement of counsel on their good faith simply because they do not satisfy each of the *Williamson* factors required of the so-called advice-of-counsel defense.  But such evidence remains subject to Rules 401 and 403.[25]  And the four *Williamson* factors are germane to both the Rule 401 and Rule 403 analyses insofar as they help a court to assess the probative value and danger of challenged evidence and weigh the one against the other.  This approach has the merit of recognizing that evidence of counsel's advice or involvement might have some probative value despite not being raised in furtherance of a so-called formal advice-of-counsel "defense" while also guarding against the dangers of unfair prejudice and confusion that sometimes attend such evidence.

With this analytical framework in mind, the Court proceeds to assess in detail each category of proffered evidence challenged by plaintiff.

---

[23]     *Bankman-Fried*, 2024 WL 477043, at *4.

[24]     *Id*.

[25]     *See id.*, at *2; *Lek Sec. Corp.*, 2019 WL 5703944, at *4; *Tourre*, 950 F. Supp. 2d at 684.

II.    *The Hannes Snellman Opinions*

A.    *2012 Opinion*

Plaintiff seeks to exclude a 2012 tax opinion prepared by Danish law firm Hannes Snellman rendered at the request of and addressed to Solo Capital.  According to defendants, they reviewed the opinion, which was "among the first written communications Solo sent Defendants regarding Danish trading,"[26] before they "decided to invest in the strategy in Denmark."[27]  The opinion considered the Danish tax implications for an unidentified and apparently hypothetical U.S. pension fund of a proposed dividend arbitrage trading strategy.[28]  It concluded that the pension fund "should be regarded as the beneficial owner of the Danish Dividend" and thus that it "should be entitled to full exemption from Danish withholding tax."[29]

Plaintiff argues that the seven-page letter should be excluded because it was not addressed to defendants and, moreover, that defendants did not know the factual premises (*i.e.*, factual disclosures) on which it was based.  In support of this position, plaintiff quotes *Lek Securities* for the proposition that "legal advice given to another does not establish good faith as a matter of law" because the defendant is not aware of the factual disclosure on which the advice was based.[30]  But it does not necessarily follow that just because a defendant did not commission legal advice that

---

[26]    Dkt 1221 (Def. Sur-Reply) at 3.

[27]    Dkt 1202 (Klugman Offer) at 9; *see* Dkt 1204 (Markowitz Offer) at ¶ 6.

[28]    Dkt 1204 (Markowitz Offer) at ¶ 14.

[29]    *Id.*

[30]    Dkt 1215 (Pl. Reply) at 4 (quoting 2019 WL 5703944, at *4).

he or she could not have known its factual basis. Where a defendant knew that complete and relevant disclosure underlying the advice had been made, it is possible that the defendant might act reasonably in relying on that advice. Here, the letter detailed the factual premises and assumptions on which its legal analysis was based, including, importantly, that the pension fund would "obtain unconditional ownership" of the Danish securities in question.[31] To be sure, the fact that defendants could not have been aware of everything Solo disclosed to Hannes Snellman might diminish the opinion's probative value with respect to defendants' mental state, but it would not necessarily negate it entirely.

Plaintiff argues also that the completeness and accuracy of Solo's disclosure to Hannes Snellman is doubtful because the opinion does not accurately describe the transactions actually executed by defendants. In other words, they contend that there were material differences between the factual premises of the Hannes Snellman 2012 opinion and the transactions actually executed on behalf of defendants, thus making any reliance unreasonable. Defendants, to the contrary, argue, they "will testify that they did understand the facts set forth in the [Hannes Snellman opinion] to match the facts of their trades in all material respects."[32]

Assuming that defendants lay a proper foundation, it may well be that the 2012

---

[31] Dkt 1202-24 (Ex. 24) at 3.

[32] Dkt 1221 (Def. Sur-Reply) at 5.

Plaintiff responds that "Defendants could not have 'understood' that the opinion applied to their transactions with Solo because the opinion was expressly premised on" certain transaction characteristics that defendants knew at the time were not true of the transactions in which they engaging. Dkt 1215 (Pl. Reply). This argument is unavailing because it is not necessarily true that the differences of which defendants were aware were material to the validity of the legal advice.

opinion would have at least some probative value. Indeed, that probative value would not necessarily be outweighed significantly by a danger of misleading the jury. On that assumption, there presumably would be little risk that the jury would "conclude mistakenly that the" Hannes Snellman attorneys "'blessed' the legality of all aspects" of the transactions because the jury would be able to read for itself exactly what type of transaction the lawyers approved of. True, as plaintiff points out, there nevertheless might be several reasons to doubt the reasonableness of defendants' reliance on the 2012 Hannes Snellman opinion, including any evidence that defendants were not aware fully of the factual disclosure on which it was based and that defendants were aware of at least certain respects in which the transactions in which they engaged differed from those assessed in the opinion. But it remains to be seen whether these risks outweigh substantially the evidence's potential probative value.

As the precise foundation for the 2012 Hannes Snellman opinion — most particularly, that defendants understood the transactions in which they were engaging to be substantially similar to the type of transaction about which the opinion pertained — is not here clear, the Court cannot now determine admissibility. Accordingly, it denies plaintiff's motion insofar as it seeks to exclude that opinion. Plaintiff will remain free to object at trial.

B.    *2013 and 2014 Opinions*

In their offer of proof, defendants Markowitz and van Merkensteijn conditionally seek to introduce two other opinions prepared by Hannes Snellman in 2013 and 2014, respectively, "at the request of Solo and others, that confirm the" advice in the 2012 opinion.[33] As plaintiff points

---

[33]    Dkt 1204 (Markowitz Offer) at ¶ 17.

16

out, this evidence would be irrelevant to defendants' good faith because defendants offer no evidence that they were aware of these opinions before they began to file the allegedly false refund claims with SKAT.[34]

Defendants state, however, that they would seek to introduce the 2013 and 2014 opinions only "[t]o the extent SKAT . . . contend[s] that defendants should have sought additional opinions from Hannes Snellman directed at them in particular, or addressing other issues."[35]  In that circumstance, claim defendants, the evidence would be relevant to the issue of their negligence because the opinions would tend to show that had defendants sought a legal opinion from their own Danish counsel (as opposed to Solo's), it is likely that they would have received the same advice. In short, the opinions would be relevant to the question of whether their alleged negligence caused plaintiff's alleged injury.

The Court declines to rule *in limine* that this evidence is admissible on a theory of relevance that is contingent upon an argument plaintiff never may make.  Accordingly, the 2013 and 2014 opinions are excluded as irrelevant and potentially misleading under Rules 401 and 403. Should plaintiff introduce evidence or argument at trial suggesting that "defendants should have sought additional opinions from Hannes Snellman directed at them in particular, or addressing other issues,"[36] defendants would be welcome, outside the presence of the jury, to seek admission of the evidence.

---

[34]     Dkt 1215 (Pl. Reply) at 7–8.

[35]     Dkt 1204 (Markowitz Offer) at ¶ 17.

[36]     *Id*.

III.    *The Bech-Bruun Opinion*

Plaintiff seeks also to exclude evidence proffered by defendant Klugman of a tax opinion obtained by a non-party German merchant bank, North Channel Bank ("NCB"), from Danish law firm Bech-Bruun. The opinion considered the "Danish liability implications for NCB of acting as a custodian bank in certain transactions over Danish listed equities entered into by" an unnamed U.S. pension fund.[37] Although he acknowledges that the opinion was not rendered for or addressed to him and that he was not a NCB client, Klugman states that he "was shown the opinion" and it informed his good-faith participation in the trading strategy.[38] In particular, Klugman seeks to introduce Bech-Bruun's conclusion that "[NCB] should not be subject to Danish civil law liability to compensate the Danish state for any loss suffered as a result [of] its role in the contemplated transaction."[39] Klugman argues that the opinion is "highly relevant to his state of mind" because it "opined on the legality" of transactions he was considering.[40]

Plaintiff argues, and the Court agrees, that the probative value of the Bech-Bruun opinion would be negligible. It expressly "did not consider 'the tax treatment in Denmark of other parties than NCB,' *e.g.*, the pension plan, or 'the liability issues of other parties than NCB.'"[41]

---

[37]    Dkt 1202-25 (Ex. 25) at 2.

[38]    Dkt 1202 (Klugman Offer) at 10.

[39]    *Id*. at 10 (quoting Dkt 1202-25 (Ex. 25) at 6).

[40]    *Id*.

[41]    Dkt 1215 (Pl. Reply) at 6–7 (quoting Dkt 1202-25 (Ex. 24) at 2).

Rather, "the opinion is premised on the pension plan having 'obtained a tax opinion from Danish tax counsel confirming the plan should be entitled to reclaim in full Danish withholding tax on dividends paid on the Equities.'"[42]  In addition, the opinion noted that because no Danish tax opinion had been obtained assessing the "exact" transaction contemplated, it "would [be] more difficult for NCB to claim that it has . . . acted in good faith" with respect to Danish law.[43]  Thus, although the Bech-Bruun opinion is not necessarily irrelevant to Klugman's state of mind, its probative value is minor.[44]

This marginal probative value is substantially outweighed by the danger of unfair prejudice and confusion of the jury. The evidence unfairly would suggest to the jury that Bech-Bruun had approved of the representations defendant caused to be made to plaintiff.  Such an impression would be misleading and unfairly prejudicial to plaintiff.  The Rule 403 balance is against the defendant on this.

Accordingly, the Bech-Bruun opinion is excluded.

## IV.    *Evidence of Legal Advice Regarding Trading In Germany and Belgium*

Plaintiff moves to exclude defendants' proffered evidence of attorneys' advice on German and Belgian law.  Specifically, defendants propose to adduce evidence that they reviewed legal opinions from "leading law firms in both Germany (Norton Rose) and Belgium (Freshfields)"

---

[42]

        *Id.* (quoting 1202-25 (Ex. 24) at 4–5).

[43]

        Dkt 1202-25 (Ex. 24) at 13.

[44]

        Of note, in late 2023, the Supreme Court of Denmark found Bech-Bruun liable to SKAT for advice it gave to NCB "concerning its participation in the fraud on SKAT."  Dkt 976 at 1. It ordered the firm to pay SKAT approximately $58 million.  *Id.*; *see also* Dkt 976-4.

prepared on behalf of Solo regarding the legality of certain dividend arbitrage transactions in Germany and Belgium.[45]  In their most recent filing, defendants Markowitz, van Merkensteijn, and Klugman contend that this evidence would be relevant to their good faith in engaging in the transactions in Denmark because they "contemporaneously understood the German and Belgian transactions to be quite similar in form to the Danish transactions."[46]

The proffered evidence would be irrelevant to defendants' understanding of Danish law because defendants have suggested no basis on which they could have concluded that Danish law is the same as that of Germany or Belgium.  Even if they had, the evidence still would be excluded as unfairly prejudicial and misleading.  Such evidence risks suggesting to the jury that because lawyers were involved in the German and Belgian transactions, they also had "blessed" Danish transactions.  Accordingly, the substance of advice rendered by lawyers in dividend arbitrage transactions in Germany and Belgium is excluded as potentially substantially misleading pursuant to Rule 403.

Defendant Klugman suggests another theory of relevance.  He says that the evidence would establish that he acted responsibly by partnering with Solo because it had a track record of seeking legal advice from reputable law firms.  Specifically, he seeks to introduce evidence that "Solo Capital had a successful record of carrying out a dividend arbitrage strategy analogous to the strategy in which Mr. Klugman intended to participate in Denmark" and that "Solo Capital and the

---

[45]    Dkt 1221 (Def. Sur-Reply) at 7.

[46]    *Id.* at 8.

other investors were ensuring that they complied with both domestic and international law."[47]  This evidence arguably would be relevant to Klugman's decision to do business with Solo and, it follows, to whether he was negligent and to the balance of the equities.  It would not be relevant, however, to his belief that the specific trading at issue in this case was legal.  This distinction is quite fine and the risk of unfair prejudice to plaintiff is manifest.  In particular, there is a significant risk that the proffered evidence could suggest to the jury, without any basis, that advice as to the law in Germany or Belgium would be applicable in Denmark.

Accordingly, defendants may introduce evidence and argument regarding lawyers' advice on and participation in the German and Belgian trading insofar as it would be relevant to their belief that Solo had a track record of diligence and lawful conduct.  Defendants may not, however, introduce the substance of the legal advice thereby received or suggest that the evidence is probative of their belief that the Danish trading strategy was legal.

V.    *Evidence of Kaye Scholer's Involvement*

Last, plaintiff seeks to "preclude Defendants from arguing to the jury that Kaye Scholer's involvement in and advice concerning their scheme evidences their good faith in making the beneficial ownership representations to SKAT."[48]  Defendants object, arguing that the firm's involvement should be admitted lest "the jury [draw] the false impression that Defendants acted alone in making the representations at the heart of this case."[49]

---

[47]    Dkt 1202 (Klugman Offer) at 8.

[48]    Dkt 1215 (Pl. Reply) at 10.

[49]    Dkt 1221 (Def. Sur-Reply) at 9.

To begin with, plaintiff does not seek to preclude all evidence of Kaye Scholer's participation. Instead, it seeks to preclude defendants from arguing that this participation is relevant to their purported good faith in representing to SKAT that they were the beneficial owners under Danish law of certain securities. And the evidence is clearly irrelevant to defendants' mental state in making those representations because, as defendants themselves acknowledge, Kaye Scholer's legal advice was limited to issues of U.S. law.[50] The firm did not advise defendants on Danish law.[51] The Court finds that Kaye Scholer's advice to defendants regarding U.S. law has minimal, if any, probative value.

On the other hand, defendants' attempt to introduce a raft of evidence and argument about the firm's involvement "risks suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events."[52] Because the "proffered evidence is only collaterally related to the charged conduct and is thus minimally probative," "these concerns

---

[50]   *See* Dkt 1204 (Markowitz Offer) at III ("Related U.S. Legal Advice and Support From Kaye Scholer").

Although defendants proffer Kay Scholer lawyer Peter Wells's deposition testimony that he remembered dimly a discussion of beneficial ownership, he also testified that he did *not* "recall specifically the conclusion to that discussion" or its factual basis. Dkt 1204-152 (Ex. 146) at 31:14–23.

[51]   Defendants' senior Kaye Scholer lawyer, defendant Ben-Jacob, testified at a deposition that the firm did not include "Danish lawyers" and thus "can't advise on Danish legal matters." Dkt 1124 (Ex. 3) at 155:15–16.

[52]   *Bankman-Fried*, 2024 WL 477043, at *3.

. . . warrant exclusion."[53]

Accordingly, defendants may not argue "that Kaye Scholer's involvement in and advice concerning their scheme evidences their good faith in making the beneficial ownership representations to SKAT."[54] Defendants may, however, introduce such evidence insofar as they seek to illustrate the mechanics of the trading strategy and show the jury that they did not "act[] alone" in filing their claims with SKAT.[55]

*Conclusion*

Plaintiff's motion (Dkt 1123) is granted in part and denied in part. In summary, the Court, on the basis of the proffers now before it, holds as follows:

- The 2012 Hannes Snellman opinion is not excluded. Plaintiff's motion with respect to this evidence is denied without prejudice.

- The 2013 and 2014 Hannes Snellman opinions are excluded.

- The Bech-Bruun opinion is excluded. Evidence regarding lawyers' participation in or advice concerning dividend arbitrage transactions in Germany and Belgium is excluded except to the extent that it is introduced to justify defendants' belief that Solo Capital was a trustworthy and diligent

---

[53]    *Id.*

[54]    Dkt 1215 (Pl. Reply) at 10.

[55]    Dkt 1221 (Def. Sur-Reply) at 9.

23

business partner.

- Evidence that Kaye Scholer was involved in and advised defendants on the arbitrage trading of Danish securities is excluded insofar as it is introduced to establish defendants' good faith in representing to SKAT that they were the beneficial owners under Danish law of certain securities.

The Court would entertain limiting instructions regarding any of the evidence admitted over plaintiff's objection should plaintiff so request.

SO ORDERED.

Dated:        November 6, 2024

_____
Lewis A. Kaplan
United States District Judge